UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Koffi Duffi, | Case No. 23-cv-02421 (ECT/TNL) |
| Petitioner, | |
| v. | REPORT & RECOMMENDATION |
| Merrick B. Garland, U.S. Attorney General, | |
| Alejandro Mayorkas, Secretary, Department of Homeland Security, | |
| Tae D. Johnson, Acting Director, Immigration and Customs Enforcement, | |
| Marcos Charles, Director, St. Paul Field Office, Immigration and Customs Enforcement, and | |
| Eric Tollefson, Sheriff, Kandiyohi County, | |
| Respondents. | |

John R. Bruning, The Advocates for Human Rights Refugee & Immigrant Program, 330 2nd Avenue South, Suite 800, Minneapolis, MN 55401 (for Petitioner); and

Ana H. Voss and David W. Fuller, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents Garland, Mayorkas, Johnson, and Charles).

## I. INTRODUCTION

This matter comes before the Court on Petitioner Koffi Duffi's Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1, under 28 U.S.C. § 2241. The Petition has been

1

referred to the undersigned for a report and recommendation to the district court, the Honorable Eric C. Tostrud, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

## II. BACKGROUND

Petitioner is a native and citizen of the Ivory Coast. *See, e.g.*, Pet. ¶ 19; Memorandum and Order of the Immigration Judge ("IJ Decision"), Pet. Ex. D, ECF No. 1-5 at 1. The United States Customs and Border Protection admitted Petitioner to the United States as a Lawful Permanent Resident ("LPR") on October 23, 2015. Pet. ¶ 19; Decl. of William J. Robinson ¶ 4, ECF No. 6.

Petitioner has a criminal history. Pet. Ex. C, ECF No. 1-4 at 4-7. Since 2015 Petitioner has been convicted of several crimes including burglary, theft, false report to law enforcement, possession of drug paraphernalia, and possession of methamphetamine. *Id.*; Pet. ¶ 20. *See also* IJ Decision, ECF No. 1-5 at 2. Immigration and Customs Enforcement ("ICE") first encountered Petitioner in January 2019 in Bismarck, North Dakota where Petitioner was charged with unauthorized use of personal identifying information. Robinson Decl. ¶ 5, ECF No. 6. At this encounter, ICE's Enforcement and Removal Operations interviewed Petitioner and found out that he had two convictions for theft and was therefore eligible for removal proceedings. *Id.*

On February 22, 2019, ICE arrested Petitioner and shortly thereafter on March 12, 2019, the Department of Homeland Security ("DHS") brought removal proceedings against Petitioner under Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). Pet. ¶ 21; Pet. Ex. A, ECF No. 1-2 at 1; IJ Decision, ECF No. 1-5 at 1. *See also* Robinson Decl. ¶ 6, ECF No. 6.

In response to the removal proceedings, Petitioner filed an Application for Asylum and for Withholding of Removal. Resp. at 5, ECF No. 5. On July 12, 2019, an Immigration Judge ("IJ") granted Petitioner's asylum application and sustained the charge of removability under the INA. Pet. ¶ 21; *see generally* Pet. Ex. B, ECF No. 1-3. DHS did not appeal the IJ's July 12, 2019, decision. Robinson Decl. ¶ 11. Thereafter, ICE released Petitioner from their custody. *Id.* at ¶ 12.

After Petitioner's asylum grant, Petitioner was convicted of many criminal offenses. Pet. ¶ 23; Pet. Ex. C, ECF No. 1-4 at 5-7; *see also* IJ Decision, ECF No. 1-5 at 2. A few years later, on August 5, 2022, ICE arrested and detained petitioner at the Kandiyohi County Jail following his release from a Detention Center in Bismarck, North Dakota for possession of a controlled substance. Pet. ¶¶ 1-2, 24; Robinson Decl. ¶ 14. DHS again brought a removability action against Petitioner under the INA. Robinson Decl. ¶ 14.

On September 7, 2022, DHS brought a motion to reopen and terminate Petitioner's asylum. *Id.* at ¶ 15. According to Petitioner, DHS improperly filed a notice to appear on Petitioner and later withdrew the notice to appear and filed the motion to reopen. Pet. ¶ 24. DHS sought, among other things, termination of Petitioner's grant of asylum, arguing that Petitioner's convictions since the IJ's grant of asylum in 2019, constituted particularly

3

serious crimes. Pet. ¶ 25; IJ Decision, ECF No. 1-5 at 2. DHS also filed a statement alleging that Petitioner committed fraud in the removal proceedings and that he was not eligible for asylum at the time such relief was granted. IJ Decision, ECF No. 1-5 at 2.

On April 20, 2023, the IJ found that none of Petitioner's criminal offenses constituted particularly serious crimes. Pet. ¶ 25; IJ Decision, ECF No. 1-5 at 7-14, 19-20. The IJ also found that Petitioner did not commit fraud in the removal proceedings. Pet. ¶ 28; IJ Decision, ECF No. 1-5 at 14-16. Therefore, the IJ declined to terminate Petitioner's asylum status. IJ Decision, ECF No. 1-5 at 16, 19-20. The IJ also found that Petitioner retained his LPR status and terminated the removal proceedings against him. Pet. ¶ 22; IJ Decision, ECF No. 1-5 at 8, 19-20.

On April 28, 2023, DHS appealed the IJ's April 20, 2023, decision to the Board of Immigration Appeals ("BIA"). *See generally* Pet. Ex. E, ECF No. 1-6. Both parties filed their appeal briefs to the BIA. Robinson Decl. ¶ 20. The BIA has not yet issued a decision. Pet. ¶ 29. While the appeal has been pending, on June 8, 2023, an IJ entered a custody redetermination order, finding Petitioner subject to mandatory detention per 8 U.S.C. § 1226(c). Robinson Decl. ¶ 19. Petitioner then filed this action on August 10, 2023, challenging his ongoing detention. *See generally* Petition.

Petitioner has been detained at the Kandiyohi County Jail since August 5, 2022. Pet. ¶¶ 2, 6. Petitioner requests that he be afforded a bond hearing where DHS "must bear the burden of proving by clear and convincing evidence dangerousness and flight risk." Pet. ¶ 56. Petitioner requests that this bond hearing occur within 14 days of this Order. *Id.* at 27.

Respondents Merrick B. Garland, Alejandro Mayorkas, Tae D. Johnson, and Marcos Charles (collectively, "Federal Respondents") oppose the Petition.[1] *See generally* Resp.

## III. ANALYSIS

### A. Legal Standard

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)), *accepting report and recommendation*, 2019 WL 201761 (D. Minn. Jan. 15, 2019). Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions under 28 U.S.C. § 2241. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "It is well established that the Fifth Amendment entitles [non-citizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Demore*, 538 U.S. at 523.

---

[1] Respondent Tollefson has not responded.

Section 1226(c) mandates that certain criminal non-citizens be taken into custody during removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018); *Demore*, 538 U.S. at 517-18, 527-28. "In *Demore*, the Supreme Court held that the government may, consistent with the Due Process Clause, detain removable [non-citizens] under § 1226(c) for the 'brief period necessary' for removal proceedings to run their course." *Muse v. Sessions*, 409 F. Supp. 3d 707, 713 (D. Minn. 2018) (quoting 538 U.S. at 513); *see, e.g.*, *Bolus A. D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 961 (D. Minn. 2019) ("Mandatory detention pursuant to 8 U.S.C. § 1226(c) does not violate a detainee's Fifth Amendment due process rights during the 'brief period necessary' for removal proceedings."); *Liban M. J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 962 (D. Minn. 2019) ("The Supreme Court has held that detention under § 1226(c) is consistent with the Due Process Clause for the 'brief period necessary' required [sic] to complete removal proceedings."). "Constitutional difficulties arise, however, when detention under § 1226(c) ceases to be 'brief.'" *Muse*, 409 F. Supp. 3d at 713; *see, e.g.*, *Bolus A. D.*, 376 F. Supp. 3d at 961; *Liban M. J.*, 367 F. Supp. 3d at 962.

In *Jennings*, the Supreme Court subsequently held "that the plain text of § 1226(c) requires detention throughout a [ non-citizen's] removal proceedings and could not plausibly be read to contain an implicit time limitation." *Pedro O. v. Garland*, 543 F. Supp. 3d 733, 738 (D. Minn. 2021) (citing 138 S. Ct. at 846-47). *Jennings*, however, did not address the accompanying constitutional due process questions and remanded them for consideration by the appellate court in the first instance. 138 S. Ct. at 839, 851; *see Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-cv-1845 (NEB/HB), 2019 WL 1923110, at *2

(D. Minn. Apr. 30, 2019) ("*Jennings* did not address whether, at a certain point, prolonged detention implicates the Due Process Clause."); *Muse*, 409 F. Supp. 3d at 713 ("The [*Jennings*] Court expressed no view on the constitutional question that the lower courts had tried to avoid: What limitations does the Due Process Clause place on detention under § 1226(c)?"); *see also, e.g.*, *Nyynkpao B. v. Garland*, No. 21-cv-1817 (WMW/BRT), 2022 WL 1115452, at *2 (D. Minn. Apr. 14, 2022), *appeal filed*, *Banyee v. Garland*, No. 22-2252 (8th Cir.); *Pedro O.*, 543 F. Supp. 3d at 738.

Following *Jennings*, courts in this District have and continue to hold "that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable," applying the multi-factor test set forth in *Muse*. *Muse*, 409 F. Supp. 3d at 715; *see Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 956-58 (D. Minn. 2018); *see, e.g.*, *Tao J.*, 2019 WL 1923110, at *3-4; *Bolus A. D.*, 376 F. Supp. 3d at 961-62; *Liban M. J.*, 367 F. Supp. 3d at 963-65; *Abdulkadir A.*, 2018 WL 7048363, at *11-13; *see also, e.g.*, *Zackaria D. M. v. Garland*, No. 21-cv-2629 (SRN/LIB), 2022 WL 16541084, at *3 (D. Minn. Oct. 28, 2022), *appeal dismissed*, *Mohamed v. Garland*, No. 22-3652, 2023 WL 4344604 (8th Cir. Mar. 20, 2023); *Nyynkpao B.*, 2022 WL 1115452, at *2; *Jamie M. v. Garland*, No. 21-cv-743 (NEB/BRT), 2021 WL 5567864, at *2-3 (D. Minn. Nov. 29, 2021); *Pedro O.*, 543 F. Supp. 3d at 738; *Omar M. v. Garland*, No. 20-cv-1784 (NEB/BRT), 2021 WL 3442337, at *2 (D. Minn. Mar. 29, 2021), *appeal dismissed*, *Mohamed v. Garland*, No. 21-2211, 2021 WL 5630346 (8th Cir. Aug. 11, 2021). These factors are:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Muse*, 409 F. Supp. 3d at 715.[2]

### B. Application of *Muse* Factors

#### 1. First Factor: Length of Detention to Date

The first factor is the length of detention to date. *Id.* at 716. The length of detention "is critical to the due-process inquiry." *Id.* "[T]he longer detention persists, the more difficult it is for the government to justify continued detention." *Bolus A. D.*, 376 F. Supp. 3d at 961. "Continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the time frame described in *Demore*." *Abdulkadir A.*, 2018 WL 7048363, at *12 (quotation omitted); *see Liban M. J.*, 367 F. Supp. 3d at 963 ("This inquiry contemplates how long the deprivation [of liberty] has lasted and is critical of detention that can no longer be categorized as brief." (quotation omitted)). "*Demore* expressed the understanding that detention under § 1226(c) would be brief, and this assumption was key to the [Supreme] Court's conclusion that the law complied with due process." *Muse*, 409 F. Supp. 3d at 416 (quotation omitted); *see Demore*, 538 U.S. at 528-

---

[2] These factors are based on *Reid v. Donelan*, 819 F.3d 486, 500-01 (1st Cir. 2016), which was decided prior to *Jennings*. The Federal Respondents point out that the First Circuit Court of Appeals has since withdrawn *Reid*. 2018 WL 4000993 (1st Cir. May 11, 2018). Acknowledging that *Reid* was withdrawn after *Jennings*, *Muse* found that these "factors 'represent a reasonable framework for balancing the due process interests at stake' even though they were 'originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c).'" 409 F. Supp. 3d at 715 n.3 (quoting *Portillo v. Hott*, No. 1:18-470, 2018 WL 3237898, at *7-9 (E. D. Va. July 3, 2018)).

31. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse*, 409 F. Supp. 3d at 716.

Petitioner has now been detained for approximately one year and two months, which is "beyond the 'brief' period assumed in *Demore*." *Liban M. J.*, 367 F. Supp. 3d at 964; *see Nyynkpao B.*, 2022 WL 1115452, at *3 (making comparison to "the 'brief' several-month period contemplated in *Demore*"). Under existing case law, the length of Petitioner's detention weighs in his favor. *See, e.g.*, *Xiong v. Garland*, No. 20-cv-2678 (NEB/BRT), 2021 WL 2482309, at *3 (D. Minn. May 12, 2021) ("approximately 11 months"), *report and recommendation accepted*, 2021 WL 2476788 (D. Minn. June 17, 2021), *appeal dismissed*, No. 21-2895, 2021 WL 7159183 (8th Cir. Sept. 8, 2021); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 902 (D. Minn. 2020) (same); *see also, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *3 (approximately 12 months); *Liban M. J.*, 367 F. Supp. 3d at 963 (same); *Abdulkadir A.*, 2018 WL 7048363, at *12 (9 months).

### 2. Second Factor: Likely Duration of Future Detention

The second factor is the likely duration of future detention, "consider[ing] how long the detention is likely to continue in the absence of judicial relief." *Muse*, 409 F. Supp. 3d at 716. In doing so, "courts consider the anticipated duration of the entire judicial and administrative process." *Bolus A. D.*, 376 F. Supp. 3d at 962; *see Muse*, 409 F. Supp. 3d at 716-17.

DHS's appeal is currently pending before the BIA. Pet. ¶ 29. "Petitioner's detention will continue for an unknown period of time while [s]he awaits resolution of the appeal . . . ." *Abshir H.A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414, at *2 (D. Minn.

9

Aug. 7, 2019). Based on the record before the Court, it is not feasible to predict when the BIA will issue its decision. *See Omar M.*, 2021 WL 3442337, at *3. Moreover, while the Federal Respondents contend that any subsequent appeal is speculative, "an appeal of the BIA's decision to the United States Court of Appeals for the Eighth Circuit is more than plausible and perhaps is likely. As such, [Petitioner] may be detained for several more months as his case continues to proceed through both the administrative and judicial process." *Bolus A. D.*, 376 F. Supp. 3d at 962; *see Nyynkpao B.*, 2022 WL 115452, at *3 & n.1. Thus, "some indeterminate period of future detention seems likely," *Pedro O.*, 543 F. Supp. 3d at 739, and "[c]ourts in this district have weighed this factor in the noncitizen's favor." *Omar M.*, 2021 WL 3442337, at *3. Accordingly, this factor likewise favors Petitioner.

### 3. Third Factor: Conditions of Detention

The third factor is the conditions of detention. *Muse*, 409 F. Supp. 3d at 717. Non-citizens "held under § 1226(c) are subject to civil detention rather than criminal incarceration." *Id.* "Whether the conditions of civil immigration detention are meaningfully different from those of criminal detention factors into the reasonableness of Petitioner's detention." *Liban M. J.*, 367 F. Supp. 3d at 964; *accord Tao J.*, 2019 WL 1923110, at *4. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717; *see Nyynkpao B.*, 2022 WL 1115452, at *3 ("But there is a direct correlation between the strength of Petitioner's argument that he is entitled to a bond hearing and the degree to which the conditions of Petitioner's confinement

10

resemble penal confinement."). Further, "the weight of this factor increases with the length of detention." *Bolus A. D.*, 376 F. Supp. 3d at 962; *accord Muse*, 409 F. Supp. 3d at 717.

The Federal Respondents do not dispute that Petitioner is being detained at a criminal corrections facility, namely, the Kandiyohi County Jail. Resp. at 24. As such, the conditions of Petitioner's detention are difficult to distinguish from those in criminal incarceration. *See Bolus A. D.*, 376 F. Supp. 3d at 962 (confinement "in a corrections facility with inmates who are either serving criminal sentences or awaiting criminal trials" is "indistinguishable from criminal incarceration"); *Muse*, 409 F. Supp. 3d at 717 (confinement "in a county jail alongside inmates who are serving criminal sentences" is "indistinguishable from penal confinement"). These conditions coupled with the length of Petitioner's detention result in this factor weighing in Petitioner's favor. *See Bolus A. D.*, 376 F. Supp. 3d at 962; *Muse*, 409 F. Supp. 3d at 717; *see also, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *3; *Pedro O.*, 543 F. Supp. 3d at 739; *Omar M.*, 2021 WL 3442337, at *3.

### 4. Fourth & Fifth Factors: Delays in the Immigration Proceedings Caused by the Parties

The fourth and fifth factors consider any delays in the immigration proceedings caused by the parties. *See Muse*, 409 F. Supp. 3d at 717-18. Each party has the right to advance substantive arguments in support of its position throughout the process. *See, e.g.*, *Bolus A. D.*, 376 F. Supp. 3d at 962; *Liban M. J.*, 367 F. Supp. 3d at 965; *Muse*, 409 F. Supp. 3d at 717-18; *see also, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *4; *Pedro O.*, 543 F. Supp. 3d at 739; *Omar M.*, 2021 WL 3442337, at *3 & n.5. These factors are primarily

focused on whether a party has engaged in dilatory tactics or unreasonable conduct. For example, "[i]f courts did not take into account the [non-citizen's] role in delaying removal proceedings, they would encourage deportable criminal [non-citizens] to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." *Muse*, 409 F. Supp. 3d at 717.

There are no accusations that either Petitioner or DHS engaged in dilatory tactics. Petitioner even acknowledged that the fifth factor "weighs in the [Federal Respondents'] favor." Pet. ¶ 51. Nonetheless, Petitioner argues that DHS's improper filing of a notice to appear caused Petitioner to be detained longer. *Id.* at ¶ 52. Based on the record before the Court, there is nothing to suggest that the filing of a notice to appear instead of a motion to reopen was the result of DHS not acting diligently. And only about a month passed before DHS corrected the error. *Id.* at ¶ 24. Although Petitioner accuses DHS of delaying removal proceedings by filing an improper motion, Petitioner and the Federal Respondents agree that neither party engaged in dilatory tactics. The Court finds both factors to be neutral.

### 5. Sixth Factor: Likelihood of a Final Removal Order

The sixth and final factor is "the likelihood that the proceedings will culminate in a final removal order." *Muse*, 409 F. Supp. 3d at 717. As this Court has previously observed, judges in this District have declined to speculate on the outcome of pending proceedings and most often evaluate this factor to be neutral. *Abshir H. A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719467, at *8 (D. Minn. June 28, 2019), *report and recommendation adopted*, 2019 WL 3719414 (D. Minn. Aug. 7, 2019); *see, e.g.*, *Omar M. v. Barr*, No. 18-cv-2646 (JNE/ECW), 2019 WL 3570790, at *7 (D. Minn. May 6, 2019)

12

("The Court is not in a position to weigh the merits of the removal order, and therefore finds this factor neutral."), *report and recommendation adopted*, 2019 WL 2755937 (D. Minn. July 2, 2019), *appeal dismissed*, *Mohamed v. Barr*, No. 19-2881, 2019 WL 8112881 (8th Cir. Oct. 17, 2019); *Tao J.*, 2019 WL 1923110, at *4 ("The Court agrees it is not in the position to weigh the merits of the removal order and thus finds this factor to be neutral. The Court cannot predict what will occur with DHS's appeal to the BIA, and thus does not have a sufficient basis to determine whether Petitioner will likely be removed."); *Bolus A. D.*, 376 F. Supp. 3d at 962 ("[A]s the Court is not in a position to weigh the merits of either the government's grounds for removal or B.D.'s appeal, this factor is neutral."); *Abdulkadir A.*, 2018 WL 7048363, at *12 ("This Court is not inclined to speculate about the merits of the arguments before the BIA or the BIA's ruling."); *see also, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *4; *Pedro O.*, 543 F. Supp. 3d at 739; *Omar M.*, 2021 WL 3442337, at *3 n.5. This Court is likewise not inclined to speculate on the ultimate outcome of DHS's appeal, and therefore finds this factor to be neutral as well.

### 6. Balance of *Muse* Factors

In sum, three of the factors weigh in Petitioner's favor; three are neutral. On balance, the Court finds that continuing to detain Petitioner without affording him a bond hearing would violate his right to due process under the Fifth Amendment, and therefore recommends that the Petition be granted in part and Petitioner be afforded a bond hearing as described more fully below. *See, e.g.*, *Omar M.*, 2019 WL 3570790, at *7; *Tao J.*, 2019 WL 1923110, at *4; *Bolus A. D.*, 376 F. Supp. 3d at 962; *Liban M. J.*, 367 F. Supp. 3d at 965; *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019); *Abdulkadir A.*, 2018

WL 7048363, at *13; *Muse*, 409 F. Supp. 3d at 718; *Mohamed*, 376 F. Supp. 3d at 957-58; *see also, e.g.*, *Zackaria D. M.*, 2022 WL 16541084, at *3; *Nyynkpao B.*, 2022 WL 1115452, at *4; *Jamie M.*, 2021 WL 5567864, at *3.

### C. Bond Hearing Procedures

Should he be granted a bond hearing, Petitioner requests that DHS bear the burden of proof to show that he presents a danger to the community or a flight risk by clear and convincing evidence. Pet. ¶ 56. Petitioner also requests that the bond hearing take place within 14 days. *Id.* at 27.

Previously, "[c]ourts in this District . . . generally declined to decide the burden-of-proof issue, concluding that the [Immigration Judge] should have the first opportunity to address the issue of the burden of proof." *Omar M.*, 2021 WL 3442337, at *4 (citing cases); *see, e.g.*, *Pedro O.*, 543 F. Supp. 3d at 740 ("Several courts in this District have decided to leave all questions concerning the appropriate procedure for a bond hearing under § 1226(c) to the immigration judge in the first instance."); *see also Jamie M.*, 2021 WL 5567864, at *3 ("Until *Omar M.*, courts in this District had declined to decide the burden-of-proof issue.").

*Omar M.* and subsequently *Pedro O.* laid bare the futility of continuing to do so. *See Jamie M.*, 2021 WL 5567864, at *4. In *Omar M.*, an Immigration Judge "considered the burden-of-proof issue in the first instance, and . . . noted clearly that she will not place the burden on the government without an explicit order from" a federal court. 2021 WL 3442337, at *5. In *Pedro O.*, it was noted that "immigration judges seem to believe themselves prohibited by BIA precedent," which requires that the burden be placed on a

14

non-citizen "in a bond hearing under § 1226*(a)*," "from considering other options." 543 F. Supp. 3d at 741 (quotation omitted) (emphasis added).

*Omar M.* and decisions from this District in the wake of *Omar M.* have concluded that "the burden of proof belongs with the government" at the bond hearing and "the appropriate standard of proof is clear and convincing evidence." 2021 WL 3442337, at *5-7; *see, e.g.*, *Zackaria D. M.*, 2022 WL 16541084, at *4-5; *Chuol P.M. v. Garland*, No. 21-cv-1746 (KMM/DTS), 2022 WL 2302635, at *1 (D. Minn. June 27, 2022); *Nyynkpao B.*, 2022 WL 1115452, at *4-6; *Jamie M.*, 2021 WL 5567864, at *3-5; *Pedro O.*, 543 F. Supp. 3d at 741-45. Most often, the analysis centers around the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976): (1) the nature of the private interest at stake; (2) the risk of an erroneous deprivation of that interest compared to the probable value of any additional or alternative safeguards; and (3) the governmental interest, including any fiscal or administrative burdens resulting from any additional or alternative procedures. *Pedro O.*, 543 F. Supp. 3d at 741-43; *see, e.g.*, *Zackaria D. M.*, 2022 WL 16541084, at *4-5; *Nyynkpao B.*, 2022 WL 115452, at *4-5; *cf. Jamie M.*, 2021 WL 5567864, at *4.

*Omar M.* and decisions from this District have found that the non-citizen has a substantial interest in avoiding prolonged and unwarranted confinement and made comparisons to the government having to bear the burden of proof when an individual's liberty is at stake in other civil contexts, such as civil commitment. *Pedro O.*, 543 F. Supp. 3d at 741; *Omar M.*, 2021 3442337, at *5; *see, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *4; *cf. Zackaria D. M.*, 2022 WL 16541084, at *5. They have noted that the applicable standard "generally must be more than a preponderance of the evidence." *Pedro. O.*, 543

15

F. Supp. 3d at 741-42; *see Omar M.*, 2021 WL 3442337, at *5. They have also noted that, when an individual's physical liberty is at stake, "the possible injury to the individual is significantly greater than any possible harm to the [government]," and therefore the government "must bear a heightened burden." *Pedro O.*, 543 F. Supp. 3d at 742; *see, e.g.*, *Zackaria D. M.*, 2022 WL 16541084, at *5; *Nyynkpao B.*, 2022 WL 1115452, at *4.

At the same time, courts have also appreciated that "[t]he Supreme Court has long recognized Congress's broad authority over immigration, and, as a general matter, detention during removal proceedings is a constitutionally permissible part of the process." *Pedro O.*, 543 F. Supp. 3d at 742. Further, such detention "helps ensure that the individual will appear at future proceedings and will not pose any danger to the community in the meantime." *Id.* Notwithstanding this governmental interest, courts have observed that requiring the government to bear the burden of proof "is unlikely to add a significant administrative burden or undermine the [g]overnment's ability to vindicate § 1226(c)'s purpose," noting that the clear-and-convincing standard is a familiar one in immigration proceedings and the government "already has easy access to information that is likely to bear on the question whether [the non-citizen] poses a risk of flight or danger to the community—most notably, [the non-citizen's] criminal and mental-health history and information concerning [the non-citizen's] behavior and conduct during detention." *Pedro O.*, 843 F. Supp. 3d at 743; *see, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *4.

On balance, decisions from this District have reasoned that placing the burden of proof on the government to justify continued confinement of a non-citizen under § 1226(c) by clear and convincing evidence once that confinement has become so prolonged as to be

16

unreasonable "is supported by the Supreme Court's treatment of civil detention in other contexts" and the fact that "[t]he private interest in avoiding confinement is among the greatest there is." *Pedro O.*, 543 F. Supp. 3d at 742; *see Omar M.*, 2021 WL 3442337, at *6; *see also, e.g.*, *Jamie M.*, 2021 WL 5567864, at *4.  And in doing so, they have observed that "an overwhelming majority of courts have held that the [g]overnment must justify the continued confinement of a [ non-citizen] under § 1226(c) by clear and convincing evidence." *Pedro O.*, 543 F. Supp. 3d at 742; *see Omar M.*, 2021 WL 3442337, at *5; *see, e.g.*, *Nyynkpao B.*, 2022 WL 1115452, at *4.  This Court finds sound the reasoning that the clear-and-convincing standard should apply in determining whether a non-citizen's confinement under § 1226(c) should continue in the context of a remedial bond hearing.

Further, *Zackaria D. M.* recently addressed additional procedural safeguards in terms of requiring consideration of the non-citizen's ability to pay and alternatives to detention.  *Zackaria D. M.* noted that "BIA precedent appears inconsistent as to consideration of procedural safeguards such as alternatives to detention and ability to pay in the context of a § 1226(c) hearing."  2022 WL 16541084, at *6 n.6.  *Zackaria D. M.* also had in the record before it "caselaw demonstrating that [Immigration Judges] have not, in practice, always considered alternatives to detention or ability to pay during § 1226(c) bond hearings."  *Id.*  In order "to fashion a full remedy for constitutional due process violations," *Zackaria D. M.* concluded that

> there is no internally consistent way to separate out the burden and standard of proof from other procedural safeguards when ordering a remedial bond hearing.  Put differently, there is no cogent way to logically sever the burden and standard of proof from the analysis itself—that is, that no condition, or

17

>combination of conditions of release, will reasonably assure the safety of the community or [the non-citizen's] future appearance at immigration proceedings. Thus, the Court's remedy here will include a bond hearing at which the government bears the burden to prove that clear and convincing evidence supports not only [the non-citizen's] continued detention, but that nothing less than his detention will suffice.

*Id.* at *7. Therefore, at the bond hearing, *Zackaria D. M.* required the government to bear "the burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release and parole (including [the non-citizen's] ability to post bond) will ensure the safety of the community or [the non-citizen's] appearance at future immigration proceedings." *Id.*

Consistent with *Zackaria D. M.*, this Court recommends that, at the bond hearing, DHS be required to bear the burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release and parole (including Petitioner's ability to post bond) will ensure the safety of the community or his appearance at future immigration proceedings. The Court further recommends that the bond hearing take place within 21 days of any order accepting this Report & Recommendation and, should such a hearing not take place within any court-ordered time frame, that Petitioner be released on appropriate conditions absent further court order.

[Continued on next page.]

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus, ECF No. 1, be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. If this Report & Recommendation is adopted, the Federal Respondents be ordered to:

   a. Ensure that Petitioner receives an individualized bond hearing before an Immigration Judge within 21 days of such order, at which hearing DHS shall bear the burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release and parole (including Petitioner's ability to post bond) will ensure the safety of the community or his appearance at future immigration proceedings.

   b. Absent further court order, release Petitioner on appropriate conditions should such bond hearing not take place within any court-ordered time frame.

Dated: November 3, 2023

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Koffi Duffi v. Garland et al.*
Case No. 23-cv-02421 (ECT/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).